# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 25-mj-8742-Matthewman

UNITED STATES OF AMERICA

v.

Christopher Michael Garcia

_____ Defendant. _____ /

FILED BY____SW____D.C.

**Dec 10, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? ☐ Yes ☑ No

2.  Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? ☐ Yes ☑ No

3.  Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? ☐ Yes ☑ No

4.  4.  Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? ☐ Yes ☑ No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

BY: _____*Deric Zacca*_____

ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:    (561) 820-8711
Fax:    (561) 820-8777
Email:  deric.zacca@usdoj.gov

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  25-mj-8742-Matthewman |
| Christopher Michael Garcia | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ December 9, 2025 _____ in the county of _____ Palm Beach _____ in the _____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | Conspiracy to Distribute a Controlled Substance (500 grams or more of a mixture or substance containing a detectable amount of Methamphetamine) |

This criminal complaint is based on these facts:

See Affidavit.

☐ Continued on the attached sheet.

_____
Complainant's signature

Roberto Delgado-Mendez, SA DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: December 10, 2025

_____
Judge's signature

City and state: _____ West Palm Beach, Florida _____

William Matthewman, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Roberto Delgado-Mendez, a Special Agent with the United States Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn, hereby deposes and states as follows:

### INTRODUCTION and AGENT BACKGROUND

1.    This affidavit is submitted in support of a criminal complaint charging **Christopher Michael GARCIA** (hereinafter **"GARCIA"**) with the offense of Conspiracy to Distribute a controlled substance, namely over five hundred (500) grams of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846.

2.    I am a Special Agent of the DEA assigned to the West Palm Beach District Office (WPBDO), Enforcement Group 2 (EG2). As such, I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516(1).

3.    My educational background includes a Bachelor of Science degree in Political Science and Psychology from the College of Social Sciences and Public Policy at the Florida State University. In September 2023, I completed Basic Agent Training at the DEA Training Academy in Quantico, Virginia.   While attending Basic Agent Training, I received instruction on topics including, but not limited to, drug identification, current drug distribution trends, undercover operations, confidential source management, and surveillance tech

4.     I have received extensive training in conducting narcotics investigations and in identifying the means and methods used by narcotics traffickers. I have conducted or participated in numerous investigations of this nature. Much of this training and experience has been directed at the detection, investigation, seizure and surveillance of individuals involved in the manufacture, possession and distribution of controlled substances.  Through my training, education and experience, which has included debriefing cooperating drug traffickers, acting in an undercover capacity, conducting searches of locations where drugs and money have been found, and conducting surveillance on individuals engaged in drug trafficking, I have learned the various methods, packaging materials, and actions that drug traffickers utilize to conduct their illegal business and efforts that drug traffickers take to thwart law enforcement techniques.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause that Christopher Michael GARCIA committed a federal crime and does not set forth all of my knowledge about this matter.

## FACTS IN SUPPORT OF PROBABLE CAUSE

6.     On or about April 2025, the DEA began targeting a Mexico based drug broker (hereinafter "BROKER").  A DEA Task Force Officer, acting in an undercover capacity by posing as a Florida based drug distributor (hereinafter

"UC"), contacted the BROKER via WhatsApp.  The BROKER and UC have continued sporadic communications since the initial communication.

7.    In November 2025, during a series of WhatsApp text messages, the UC and the BROKER talked about conducting a transaction for six (6) to ten (10) kilograms of crystal methamphetamine. The UC agreed to pay $4,000 per kilogram of crystal methamphetamine. In early December, the BROKER told the UC that the shipment of crystal methamphetamine would be arriving in the near future.

8.    On December 7, 2025, the BROKER told the UC via WhatsApp messages that the courier would arrive the next day sometime after lunch.   The BROKER told the UC that he would let the UC know when the courier was two hours away from the UC's location.

9.    On December 8, 2025, during a series of WhatsApp messages, the BROKER told the UC that the shipment will be eight kilograms of crystal methamphetamine. Later the same date, the BROKER informed the UC that the courier had stopped to rest and would not meet with the UC until the following day.

10.   On December 9, 2025, during a series of WhatsApp messages, the UC and the BROKER agreed that the UC would meet the courier to conduct the drug transaction at a restaurant parking lot located in West Palm Beach, FL, at approximately 3:30 p.m.

11.   At approximately 2:00 p.m., during a series of WhatsApp messages, the BROKER told the UC that courier would be arriving at the restaurant parking

lot in 15 minutes. The BROKER also informed the UC that the shipment was seven (7) kilograms and instructed the UC to give the courier $7,000.

12.   At approximately 3:09 p.m., law enforcement witnessed a black Ford Explorer bearing Texas license plate MSH1229 in the area of the restaurant parking lot. Law enforcement witnessed the Explorer drive slowly through the parking lot of the adjacent businesses and park.

13.   At approximately 3:27 p.m., the UC, driving an undercover vehicle, arrived and parked at the restaurant parking lot. Around the same time, the BROKER told the UC the courier was driving a black Ford Explorer.

14.   Soon after, the Explorer reversed from its parking spot, drove to the restaurant, and parked on the passenger side of the UC's vehicle.

15.   At approximately 3:30 p.m., law enforcement witnessed a Hispanic male, later identified as Christopher Michael GARCIA as detailed below, exit the Explorer and enter the front passenger side of the UC's vehicle. GARCIA told the UC that the crystal methamphetamine was in a spare tire in the rear cargo area of the Explorer.

16.   At approximately 3:32 p.m., law enforcement witnessed the UC and GARCIA exit the UC's vehicle and walk to the rear of the Explorer. Law enforcement witnessed GARCIA open the rear hatch of the Explorer and show the UC the spare tire that had the crystal methamphetamine. GARCIA told the UC that the crystal methamphetamine was inside the tire.

17.   The UC then told GARCIA that the UC had to get the money. The UC stepped away from GARCIA and the Explorer and shortly after, law enforcement detained GARCIA near the Explorer.

18.   While still in the restaurant parking lot, law enforcement read GARCIA his Miranda rights.

19.   Law enforcement transported GARCIA to the DEA office in West Palm Beach, Florida and read GARCIA his Miranda rights a second time. GARCIA told law enforcement he acknowledged his rights and he agreed to answer questions. During the interview of GARCIA, he told law enforcement that he knew he was delivering seven to eight kilograms of crystal methamphetamine. GARCIA told law enforcement that he expected to get paid $7,000 for the transportation of the crystal methamphetamine.

20.   Law enforcement transported the Explorer to the DEA office in West Palm Beach where they used tools to open the spare tire, which law enforcement found to contain four (4) approximately gallon sized Ziploc style plastic bags, three (3) plastic and foil wrapped bundles, and one (1) taped and foil wrapped bundle. The four Ziploc style bags and one of the plastic and foil wrapped bundles contained translucent rock like substances. Law enforcement did not open the other three bundles but believes they contain the same.

21.   Law enforcement field-tested the translucent rock like substance from two of the Ziploc style bags and the opened bundle and all three tests yielded were positive for the presence of methamphetamine. The suspected

crystal methamphetamine had a seized gross weight, including all packaging, of approximately 8,102 grams.

## CONCLUSION

22.   Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that **Christopher Michael GARCIA** has committed the offense of Conspiracy to Distribute a controlled substance, namely over five hundred (500) grams of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846.

FURTHER YOUR AFFIANT SAITH NAUGHT.

_Roberto Delgado_

Roberto Delgado-Mendez
Special Agent
Drug Enforcement Administration


Sworn and Attested to me by Applicant ~~by Facetime pursuant to Fed. R. Crim.~~ _in my presence_ ~~P. 4(d) and 4.1 this~~ _10th_ day of December, 2025.

_William Matthewman_

William Matthewman
United States Magistrate Judge